[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Waterbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant whose maiden name is Susan Wright were married on September 30, 1994 at Southington, Connecticut. The plaintiff has resided continuously in the state of Connecticut for at least one year immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospect of reconciliation. There are three minor children issue of this marriage. Michael Anderson, Jr. and Shaneese Anderson both born January 22, 1990 and Durell Anderson born January 21, 1995. The defendant does not have any other minor children that were born since the date of the marriage. There has been some receipt of state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. On December 9, 1997, the defendant left the marital residence with the children and went to England. Since December 9, 1997, the defendant has not made any contribution towards the mortgage payment, real estate taxes or other expenses of the family home. Prior to the defendant going to England in December 1997 with the children, the plaintiff went to Jamaica for one week and left the defendant in charge of running his restaurant. He claims that she kept $3500 from receipts for the restaurant for that one week period. The court finds that that claim is not credible. The defendant returned from England with the three children after staying there approximately three months and checked herself and the children into a shelter.
The defendant was employed by the State of Connecticut, Department of Mental Retardation when the parties were first married and continued that employment until December 9, 1997, when she quit. She commenced that employment prior to 1990 and was employed full-time. When the plaintiff returned from Jamaica in November 1997, his attitude towards the defendant changed. Upon returning from Jamaica, he punched her in the CT Page 5548 lip. He had hit her on a prior occasion. The reason the defendant went to England on December 9, 1997, was because the plaintiff had threatened to kill her. The court finds that the termination by the defendant of her employment on December 9, 1997, was not voluntary on her part as the plaintiff had threatened to kill her.
From the evidence presented, the court finds that the plaintiff is primarily at fault for the breakdown of the marriage.
The plaintiff was born on December 6, 1960. This is the plaintiff's first marriage. He has completed elementary school and four years of high school.
The plaintiff is currently employed by the State of Connecticut, Department of Mental Retardation and has been so employed for the past ten years. His gross weekly income is $675. He also has gross weekly income from his restaurant of $200. He has weekly expenses of $822.
The 1996 Chevrolet Pickup truck has a value of $12500, a loan balance of $6273, and an equity of $6227. The plaintiff has a personal Fleet Bank checking account with a balance of $300 and a People's Bank business checking account with a balance of $1000. He also holds savings bonds for the children. He has a pension plan that he lists as an unknown present value.
The plaintiff owns a Jamaican restaurant business known as Mickey's Restaurant that he purchased in July 1996. He rents the premises where it is located. A $5000 Credit Union loan was obtained by the plaintiff to purchase and open the business.
The plaintiff purchased equipment for the restaurant during the time the parties were living together at a total cost of approximately $3000.
The parties are in dispute as to how much time the defendant was working at the restaurant in 1996 and 1997. From the evidence presented, the court finds that. in 1996 and 1997, the defendant was averaging working 25-30 hours weekly working at the restaurant. She has not worked at the restaurant since December 9, 1997.
The plaintiff's financial affidavit dated November 1, 2000 lists in scheduled B a number of liabilities. All of those liabilities have been discharged in bankruptcy except for the Waterbury taxes, some of which are still due. Further, the IRS liability has been paid in full. The IRS taxes were for the years 1995 and 1996 and were paid in full from a 1999 Income Tax Refund due to the plaintiff in the amount of $3,310.21. The taxes due to the City of Waterbury consist of the following: 1. Taxes on CT Page 5549 the 1991 Honda Civic in the amount of $243.15 as of June 22, 1998. 2. Taxes on the 1996 Chevrolet Model 1500 Pickup in the amount of $1,195.34 as of June 22, 1998. That vehicle is in both names. 3. Taxes on the Nissan in the amount of $434.61 as of June 22, 1998. That vehicle is in the plaintiff's name only. There was a court order to transfer the Nissan to the defendant. There are also two parking tickets regarding the use of the Nissan.
The defendant was born on October 1, 1965. This is the defendant's second marriage. She has completed elementary school and four years of high school.
The defendant has liabilities totaling $8,499.73. She owns a 1991 Honda Civic with a value of $1500. The may be entitled to a pension plan with the State of Connecticut through her prior employment with the Department of Mental Retardation but no credible evidence has been presented regrading that issue. She commenced employment with the Department of Mental Retardation in approximately 1988. In 1997 her gross income including overtime was between $43000 and $44000 with the Department of Mental Retardation. She always made approximately $4000 annually more than plaintiff when they both were employed by the Department of Mental Retardation. After returning from England in March 1998 with the children, she worked for an agency doing private duty work for the elderly. The parties were involved in a "bird nesting" arrangement after the defendant returned from England. In October 1998 the defendant was ordered to vacate the family residence. She worked from Community Options caring for mentally retarded people starting at approximately $12 hourly on a full-time basis from October 1998 to approximately November 1999. She was wrongfully terminated from that employment in November 1999 following which she received unemployment compensation for approximately six months until approximately May of 2000. She was then employed through an employment agency working an average of approximately three days per week until December of 2000. In December of 2000, she commenced employment through the Connecticut Institute for the Blind caring for people with various disabilities. She was hired on a part-time basis at an hourly rate of $13.18. She is presently employed in that position working 15 hours weekly. Her present gross and weekly net income is $179. Her weekly expenses total $150. She has applied for a full-time position. She believes that she will be employed full-time in approximately June of 2001 working 30-40 hours per week.
The parties purchased their family home located at 38 Westport Drive, Waterbury, Connecticut on October 12, 1995 for $116000. Title was taken in the names of both the plaintiff and the defendant. The parties resided there together from October 12, 1995 until December 9, 1997. CT Page 5550
The court finds that the fair market value of the home is $115000, that it has a mortgage of $109793 and an equity of $5,207.
The parties entered into a custody stipulation dated November 1, 2000, that covers issues of custody and visitation, tax exemption, medical insurance and removal from the state. The court has reviewed that stipulation and "finds it to be fair and equitable and in the best interests of the three children.
The State of Connecticut has filed "a statement dated January 26, 2001 regarding it's interest in this case. The parties have not received state assistance since July 31, 1998. The state requests an order $1 per year alimony from the plaintiff to the state. The state does not have a present interest in having the court enter additional financial orders payable to the state.
From the time the parties married until the defendant quit her employment with the State of Connecticut, Department of Mental Retardation on December 9, 1997, the defendant always earned more from her position with the State of Connecticut, Department of Mental Retardation than the plaintiff did.
The parties have a dispute regarding two items of personal property namely a curio cabinet and a stereo system. The curio cabinet was purchased in 1996. The stereo system was purchased commencing 1994 in three separate pieces.
This court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issues of property division, and has considered the provisions of § 46b-56 regarding the issues of custody and visitation, and has considered the provisions of § 46b-84 the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorney's feet. The court enters the following orders:
 ORDERS
A. By way of dissolution
 1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
 B. By way of custody and visitation, tax exemption, medical insurance, and removal from the state. CT Page 5551
 1. The court finds that the stipulation entered into between the parties dated November 1, 2000, is fair and reasonable and in the best interests of the minor children and enters orders in accordance with that stipulation. That stipulation is attached hereto and made a part hereof.
C. By way of support
 1. The defendant is ordered to pay to the plaintiff support in the amount of $32 per week.
 2. The parties are to divide unreimbursed medical with the plaintiff paying the first $100 for each child annually and then paying 83% of the unreimbursed medical and the defendant paying 17% of the unreimbursed medical.
D. By way of property orders
 1. The plaintiff shall keep and retain title and possession of and to the 1996 Chevy Pick-up. The plaintiff is to transfer whatever interest he has in the Nissan and Honda to the defendant and she is to retain title and possession of both such vehicles. Each party shall be responsible to pay the insurance and any loans on their respective automobiles.
 2. The parties shall retain their individual bank accounts as listed on their financial affidavits.
 3. The plaintiff shall keep all savings bonds for the children which bonds shall be used exclusively for the benefit of the children.
 4. Each party shall be responsible for their debts as shown on their respective financial affidavits and hold the other party harmless therefrom.
 5. All of the plaintiff's interest in Mickey's Restaurant business including its furniture and fixtures are all awarded to the plaintiff.
 6. All household furnishings and furniture in the possession of the plaintiff are awarded to the plaintiff and all household furnishings and furniture in the possession of the defendant are awarded to the defendant.
 7. The defendant is ordered to quitclaim to the plaintiff all of her right, title and interest in the family home located at 38 CT Page 5552 Westport Drive, Waterbury, Connecticut. Simultaneously with the delivery of the quitclaim deed the plaintiff is to execute a promissory note secured by a mortgage deed payable to the defendant in the face amount $2600 payable in full without interest on April 1, 2006. The plaintiff is to simultaneously record it at his expense the quit claim deed and the mortgage deed. The plaintiff is to keep the mortgage payments current on the family residence and hold the defendant harmless therefrom. In the event of the commencement of a foreclosure action the promissory note together with attorneys fees shall automatically become due and payable together with interest at the rare of 8% per annum effective the date the foreclosure action is filed. The promissory note shall also become due and payable in the event the home is sold prior to the note being paid in full. The note shall also become due and payable in the event the plaintiff is in arrears in his alimony payments or in the event he is in arrears in the $1900 property order payment hereinafter entered in paragraph 11. In the event the plaintiff is more than one week behind in his promissory note payments then interest on the unpaid balance shall run at the rate of 8% per annum commencing the date he is more than one week in arrears.
 8. The plaintiff is to pay the taxes owed to the City of Waterbury on the Chevrolet Pick-up truck and hold the defendant harmless therefrom. The defendant is to pay the taxes owed to the City of Waterbury on the Honda and Nissan and hold the plaintiff harmless therefrom.
 9. Each party is to retain whatever pension plan interest they may have through the State of Connecticut in accordance with their agreement.
 10. The curio cabinet and the stereo system are both awarded to the defendant.
 11. The plaintiff is to pay to the defendant the sum of $1900 payable at the rate of $100 per week without interest with the first payment to commence July 6, 2001 and then $100 weekly thereafter. In the event the plaintiff is more than one week behind in his payments then interest on the unpaid balance shall run at the rate of 8% per annum.
E. By way of alimony
 1. The plaintiff is ordered to pay to the defendant alimony in the amount of $100 per week. CT Page 5553
 2. Alimony is to terminate upon the earliest of the following events: a) the death of the plaintiff; b) the death of the defendant; c) the remarriage of the defendant; d) July 29, 2001. The defendant should have obtained full-time employment by that date and she will then have less need for alimony.
3. The provision of § 46b-86 (a) and 46b-86 (b) are applicable.
 4. The term of alimony cannot be extended regarding the $100 per week order.
 5. The plaintiff is ordered to pay to the defendant alimony in the amount of $1 per year for purposes of debt indemnification only regarding the orders entered under property orders paragraph 7 and 11. This $1 per year order shall be modifiable only in the event the plaintiff defaults with respect to such financial obligations ordered under those paragraphs, and for no other reason whatsoever. This obligation shall not be dischargeable in bankruptcy. The term limits in paragraph E2 do not apply to this paragraph.
F. By way of attorney's fees
1. No attorney's fees are awarded in favor of either party.
G. Miscellaneous Orders
 1. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and send it to the guardian ad litem for signature and filing.
 2. The parties are to exchange copies of their federal and state income tax returns by certified mail/return receipt or registered mail/return receipt within thirty days after such returns have been filed for so long as there is an outstanding alimony order and/or outstanding support order or any outstanding arrearage regarding either or both orders.
 3. An immediate wage execution is authorized for the support and alimony order entered herein.
 4. The plaintiff has the right to claim all interest and real estate tax payments for the family residence for the calendar year 2000.
5. The request of the State for an order of $1 per year is denied. CT Page 5554
 6. The plaintiff has the right to claim the children as exemptions for federal and state income tax purposes until such time as the defendant is employed full-time and the support order is modified as a result of such full-time employment. When the support order is modified as a result of such full-time employment, the court at that time can determine how to treat the tax exemptions for the children.
AXELROD, J.
 STIPULATION RE: CUSTODY
THIS AGREEMENT made on this 1st day of November 2000, by and betweenMICHAEL ANDERSON of the Town of Waterbury and State of Connecticut andSUSAN ANDERSON of the Town of Waterbury and State of Connecticut.
 WITNESSETH:
Part I Custody Visitation
 A. CUSTODY: The parties shall have joint legal custody of the minor children, Michael Anderson, Jr. born January 22, 1990, Shaneese Anderson
born January 22, 1990 and Durell Anderson born January 21, 1995 with the plaintiff having primary physical custody of the minor children.
B. VISITATION: The defendant shall have reasonable, flexible and liberal visitation with the minor children to include every other weekend on Saturday during the day and Sunday during the day. At such time as the defendant shall have appropriate living accommodations to house the children overnight, then the defendant shall have visitation every other weekend from Saturday overnight through Sunday.
Holiday Visitation shall be as follows and shall supercede the regularweekly visitation schedule:
Except as set forth below, all major holidays shall be shared with the Plaintiff having the children until 3:00 p.m. and the Defendant having the children from 3:00 p.m. until 9:00 p.m.
Christmas Eve: the parties shall alternate each year
Christmas Day: the parties shall alternate each year
The party that does not have the children on Christmas Eve shall have them Christmas Day. CT Page 5555
Father's Day: with the plaintiff
Mother's Day: with the defendant
Vacation Visitation shall be as follows and shall supercede the regularweekly visitation schedule:
Each party shall be entitled to one week of vacation with the children. Each party shall provide thirty (30) days written notice to the other when exercising said vacation visitation. The vacation time shall occur during the children's school break. Each party must provide the other with the address, telephone number and length of stay.
The above custody and visitation shall be revisited ninety (90) daysfrom the date of the approval of this stipulation.
The parties shall consult with each other regarding major decisions relating to the children, including but not limited to education, religious upbringing and non-emergency medical treatment and shall consider the best interests of the child in making any such decisions.
Each party shall have the authority to make extraordinary emergency medical decisions without the consent of the other, but shall immediately notify the other party of any such emergency.
Each party shall be entitled to speak to the children by telephone at reasonable times and intervals when the children are with the other party.
Each parent shall bear their costs and expenses associated with the minor children for any time the child is with him or her. Without limiting the generality of the foregoing, each parent shall pay his or her transportation costs incurred in connection with time spent with the children, the costs of food, clothing, entertainment or lodging.
Each parent agrees to the following:
DO NOT smoke around the children
DO NOT use drugs around the children
DO NOT swear or use foul language around the children
DO NOT call after 8:00 p.m. to speak to the children on school nights CT Page 5556
DO NOT conduct inappropriate behavior around the children
Part II Tax Exemption
The defendant shall show the plaintiff a copy of her tax return by January 31st each year. If the defendant has earned at least $15,000 in that year and has paid all child support in full, then the parties shall alternate claiming the children two to one and one to the other. If defendant does not earn at least $15,000.00 then plaintiff shall claim all three children.
Part III Medical Insurance
The plaintiff shall keep the children covered under his group insurance plan. The parties shall share the cost of any uninsured, unreimbursed medical, dental, orthodontic, optical, psychiatric, psychological or counseling expenses for the children in accordance with the child support guidelines. The provisions of Connecticut General Statutes Section 46b-84e shall be incorporated by reference.
The parties shall each be responsible for their own medical insurance and the cost thereof.
Part IV Removal from the State
Both parties agree that they will not permanently remove the children from the State of Connecticut without further order of the Court.
IN WITNESS WHEREOF, the parties have hereunto set their hands and seals on the day and year first above written.
MICHAEL ANDERSON
SUSAN ANDERSON